[No. H026601. Sixth Dist. Mar. 22, 2005.]

JUDITH LYNN GARDENHIRE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
JOSEPHINE A. FRANCESCONI et al., Real Parties in Interest.

**COUNSEL**

Valensi, Rose & Magaram, Kenneth L. Heisz and Bruce D. Sires for Petitioner.

No appearance for Respondent.

Law Offices of Grace Kubota Yabarra, Grace Kubota Yabarra; Tone & Tone and Francine Tone for Real Party in Interest Josephine Francesoni.

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., Shari Leinwand, Julian W. Poon, Dominic Lanza and Russell Roessler for Real Party in Interest St. Anne's Maternity Home.

**OPINION**

**RUSHING, P. J.—**

STATEMENT OF THE CASE

Petitioner Sister Judith Lynn Gardenhire, D.C., (hereafter Gardenhire) filed a petition for a writ of mandate directing the trial court to vacate its order denying her motion for summary judgment and to enter a new order granting the motion. We deny the petition.

Gardenhire filed her motion in a probate action to resolve competing claims by the beneficiaries of a living trust and the beneficiaries of a will to a parcel of real property. In 1989, Anne Pulizevich (Pulizevich) created the Anne Pulizevich Trust (Trust), naming herself as trustee and Ivka Barilovic (Barilovic) and Gardenhire as alternate trustees if Pulizevich became incapacitated or died. The Trust provided for Pulizevich to receive income during her lifetime. Upon her death, the Trust assets were to be distributed to O'Connor Hospital in trust for the benefit of Barilovic, Josephine Francesconi (Francesconi), and Mary Salles. Upon the death of each beneficiary, her

interest would vest in O'Connor Hospital. Pulizevich executed a quitclaim deed, transferring a parcel of real property (the Property) into the Trust. Pulizevich also executed a pour-over will, in which she left her estate to the Trust and nominated Gardenhire and Barilovic as co-executors.

In January 2002, Pulizevich executed a will, in which she expressly revoked all prior wills. Although she did not mention the Trust, Pulizevich stated that it was her intent "to dispose of all real and personal property which I have the right to dispose of by Will . . . ." In particular, Pulizevich left her personal property to Francesconi. Pulizevich put the residue of her estate into a testamentary trust for the benefit of Francesconi and Barilovic. In connection with that trust, Pulizevich expressly provided, among other things, that Barilovic could live in an apartment on the Property as long as she wished. Pulizevich named Francesconi and the president of St. Anne's Maternity Home (St. Anne's) as trustees. Pulizevich also provided that upon the deaths of Francesconi and Barilovic, the principal and interest of the testamentary trust estate would vest in St. Anne's.

On April 23, 2002, Pulizevich died. Thereafter, Francesconi filed a petition seeking a determination that Pulizevich had revoked the Trust by will before she died and regained ownership of the Property as an individual. Francesconi also sought an order transferring legal title to the Property from the Trust to the Pulizevich estate. (See Prob. Code, § 850.)[1] Gardenhire, as trustee of the Trust, opposed the petition and later filed a motion for summary judgment, seeking a determination that Pulizevich could not have revoked the Trust by will. The trial court denied summary judgment, and Gardenhire now seeks a writ of mandate to reverse that ruling.

BACKGROUND

Gardenhire's motion for summary judgment raised two issues. The first involved the meaning of article I, section 1.02 of the Trust, which provides, in relevant part, "While living, the Trustor may at any time and from time to time by written notice signed by the Trustor and delivered to the Trustee: [¶] A. Revoke or change the interest in any trust created or to be created pursuant to this Declaration of any beneficiary named in this Declaration or in any amendment to this Declaration. [¶] B. Amend any provision of this Declaration or any amendment to this Declaration to such extent as may be acceptable to the Trustee. [¶] C. Revoke in whole or in part any trust or trusts created by or to be created pursuant to this Declaration. [¶] D. Withdraw all or any part of the Trust Estate."[2] The question raised by summary judgment was whether this provision authorizes revocation by will.

---

[1] All further statutory references are to the Probate Code unless otherwise specified.

[2] Article I, section 1.03 provides, "On the death of the Trustor, the trust created by this Declaration shall become irrevocable and not subject to amendment."

The second issue involved the meaning of section 15401, subdivision (a), which provides, "(a) A trust that is revocable by the settlor may be revoked in whole or in part by any of the following methods: [¶] (1) By compliance with any method of revocation provided in the trust instrument. [¶] (2) By a writing (other than a will) signed by the settlor and delivered to the trustee during the lifetime of the settlor. If the trust instrument explicitly makes the method of revocation provided in the trust instrument the exclusive method of revocation, the trust may not be revoked pursuant to this paragraph."[3] The question raised by the summary judgment motion was whether the statute requires that the power to revoke by will be specifically and expressly stated in a trust.

In ruling on the motion, the trial court noted that the Trust expressly permitted revocation during the trustor's lifetime "by written notice" signed by the trustor and delivered to the trustee. Finding no evidence that Pulizevich intended to limit the scope of the term "written notice" and giving that term its ordinary meaning, the court found it to be "all-inclusive in terms of allowing *any* type of writing to constitute notice of revocation or amendment," including a will. (Italics added.) The court further concluded that under section 15401, the power to revoke by will need not be specifically and expressly set forth in a trust.

In her petition for a writ of mandate, Gardenhire reiterates the claims she made in her summary judgment motion and contends that both of the court's rulings were incorrect.[4]

---

[3] Section 15401, subdivision (e) provides, "The manner of revocation of a trust revocable by the settlor that was created by an instrument executed before July 1, 1987, is governed by prior law and not by this section." The Trust was created in 1989.

[4] In its written order, the trial court stated, "Viewing the extrinsic evidence in its totality, including in particular the 2002 Will itself, it becomes apparent that Decedent intended to revoke or amend the Trust by executing the 2002 Will."

In her petition, Gardenhire asserts that it is unclear what the court meant by "extrinsic evidence" or "what alleged ambiguity existed to authorize Respondent Superior Court to look at any evidence outside the two legal documents (i.e., the 2002 Will and the Trust Instrument)."

■ The issues before us are purely legal: what is the meaning of a provision in the Trust; and what is the meaning of section 15401. ■ (See *Burch v. George* (1994) 7 Cal.4th 246, 254 [27 Cal.Rptr.2d 165, 866 P.2d 92] [interpretation of trust presents question of law unless interpretation turns on credibility of extrinsic evidence]; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956] [meaning of statute presents question of law].) On the other hand, questions concerning the meaning of Pulizevich's will and whether it could have affected and did affect the Trust are not before us.

THE TRUST PERMITTED REVOCATION BY WILL

■ "In construing trust instruments, as in the construction and interpretation of all documents, the duty of the court is to first ascertain and then, if possible, give effect to the intent of the maker." (*Estate of Gump* (1940) 16 Cal.2d 535, 548 [107 P.2d 17]; see *Ephraim v. Metropolitan Trust Co. of Cal.* (1946) 28 Cal.2d 824, 834 [172 P.2d 501] ["the primary rule in construction of trusts is that the court must, if possible, ascertain and effectuate the intention of the trustor or settler"]; *Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1205 [116 Cal.Rptr.2d 319] [same].) ■ "The interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. [Citations.] Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect. [Citations.] It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. . . . 'An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation].' [Citations.]" (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866 [44 Cal.Rptr. 767, 402 P.2d 839].)

■ We agree with the trial court that because Pulizevich did not limit or qualify the term "written notice," she authorized revocation via *any* writing that unambiguously manifested her intent to revoke, including a will. We find significant support for such broad latitude in the fact that she named herself the trustee. The trust allowed Pulizevich to revoke simply by giving herself written notice of her intent to do so. Since she could not be mistaken about her own intent no matter how she chose to manifest it in writing, the broad, unqualified language of the trust reasonably implies that she did not intend to restrict the form of written notice or the nature of the documents used to provide it. Rather, any writing that unambiguously manifested her intent would do.

Relying primarily on *Rosenauer v. Title Insurance & Trust Co.* (1973) 30 Cal.App.3d 300 [106 Cal.Rptr. 321] (*Rosenauer*) and *Estate of Lindstrom* (1987) 191 Cal.App.3d 375 [236 Cal.Rptr. 376] (*Lindstrom*), Gardenhire argues that as a matter of law, Pulizevich's 2002 will could not constitute written notice sufficient to revoke the Trust.

---

Therefore, we need not determine what the court meant by its comments about the will, for those comments are not relevant to the resolution of the legal issues before us.

In *Rosenauer, supra,* 30 Cal.App.3d 300, the trust provided that " '*during her lifetime,*' " the trustor could revoke it by " '*an instrument in writing executed by the Trustor and delivered to the Trustee.*' " (*Id.* at p. 301.) The trustee was a third party. The trustor died, and in her will she expressly revoked the trust. (*Id.* at p. 302.) However, neither the will nor any other form of written revocation was delivered to the trustee during the trustor's lifetime. (*Ibid.*) At that time, former Civil Code section 2280, the predecessor to section 15401, provided, "Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. . . ." (See Stats. 1986, ch. 820, § 7, p. 2730 [repealing former Civ. Code, § 2280].) The executor of the will noted that although the trust required delivery during the trustor's lifetime, the statute did not. Nor did the statute exclude revocation by will. The executor argued that the statute controlled, and therefore, the trust could be revoked after the trustor's death by filing the will with the trustee. (*Rosenauer, supra,* 30 Cal.App.3d at pp. 302–303.)

In rejecting that claim, the court in *Rosenauer* quoted on the Restatement of Trusts, section 330, comment (j) (hereafter Comment (j)): " 'If the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances. If the settlor reserves a power to revoke the trust by transaction *inter vivos,* as for example, by notice to the trustee, he cannot revoke the trust by his will.' " (*Rosenauer, supra,* 30 Cal.App.3d at p. 303, quoting Rest.2d Trust, § 330, com. (j), p. 139.) The court also cited treatises and cases from other jurisdictions for the proposition that a "a power to revoke 'during the lifetime' of the settler, which means by a revocation taking effect before the death of the settlor[,] cannot be exercised by a will that in the nature of things cannot take effect before the death of the testator." (*Ibid.*)[5]

The *Rosenauer* court also concluded that the broad language of the statute did not negate the specific language in the trust requiring that notice of revocation be delivered during the trustor's lifetime. "While Civil Code section 2280 was undoubtedly intended to liberalize the power of revocation in California we do not believe it was intended to operate as a nullification of a trustor's plainly expressed preference for a mode of revocation. [¶] The

---

[5] For example, the court quoted *National Shawmut Bank of Boston v. Joy* (1944) 315 Mass. 457 [53 N.E.2d 113, 122], footnote omitted, where the court stated, "The distinguishing feature of a testamentary disposition is that it remains ambulatory until the death of the one who makes it. Until he dies, his title remains unimpaired and unaffected. A testamentary disposition becomes operative only upon and by reason of the death of the owner who makes it. It operates only upon what he leaves at his death. If the interest in question passes from the owner presently, while he remains alive, the transfer is inter vivos and not testamentary. [Citations.]"

thrust of the statute is to remove any doubt concerning the revocability of a voluntary trust which is silent on the subject[,] and it cannot be construed as creating an exclusive method for the exercise of the power when as here the trust is not silent but instead quite specific." (*Rosenauer, supra*, 30 Cal.App.3d at p. 304.)

*Lindstrom, supra*, 191 Cal.App.3d 375 also dealt with whether a trustor could amend or revoke her trust by will. There, the trust provided that during her lifetime, the trustor could amend, alter, or revoke it "by written instrument filed with the Trustee . . . ." (*Id.* at p. 386.) The trustee was a third party. (*Id.* at p. 380.) On appeal, the court found that the trust language was clear and unambiguous and excluded revocation, amendment or alteration by will. (*Id.* at p. 382.) Therefore, the court considered it immaterial whether the trustor intended to amend or revoke by will.

The *Lindstrom* court further noted that the trust required that the power of revocation be exercised by notice delivered to the trustee during the trustor's lifetime. The court cited Comment (j) and *Rosenauer* for the rule that where a trust provides for revocation by an inter vivos notice to the trustee, the trust cannot be revoked by a will, which does not become operative for any purpose until after the trustor has died. (*Lindstrom, supra*, 191 Cal.App.3d at pp. 385–386.) The court also pointed out that the trustor's will was not delivered to the trustee until after the trustor had died. Thus, as in *Rosenauer*, the court concluded that "a will that was not delivered to the trustee during the lifetime of the trustor cannot revoke or modify a trust." (*Id.* at p. 388.)

The results in *Rosenauer* and *Lindstrom* are unquestionably correct. In each case, the document purporting to revoke the trust was not delivered to the trustee during the trustor's lifetime as expressly required by the trust. Therefore, the attempts to revoke by will failed because the trustors had not complied with the terms of the trust.

■ In this regard, we agree that Comment (j), which figured so prominently in both cases, accurately reflects California law insofar as it states, "If the settlor reserves a power to revoke the trust *only* in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances." (Comment (j), *supra*, p. 139, italics added.) ■ As noted, section 15401 permits revocation by "any method" provided in the trust (§ 15401, subd. (a)(1)) and also by a writing, other than a will, delivered to the trustee during the trustor's lifetime *unless* "the trust instrument explicitly makes the method of revocation provided in the trust instrument the exclusive method of revocation . . . ." (§ 15401, subd. (a)(2).) In *Conservatorship of Irvine* (1995) 40 Cal.App.4th 1334, 1344, footnote 3 [47 Cal.Rptr.2d 587], the court explained that "section 15401 makes it clear a

trustor may provide express provisions in the trust agreement for revocation of the trust, and that method then will be the exclusive method for revocation . . . ." (Accord, *Lombardo v. Huysentruyt* (2001) 91 Cal.App.4th 656, 670 [110 Cal.Rptr.2d 691]; see *Hibernia Bank v. Wells Fargo Bank National Association* (1977) 66 Cal.App.3d 399, 403–404 [136 Cal.Rptr. 60].)

■ However, we do not agree with the further statement in Comment (j), *supra*, page 139, that "[i]f the settlor reserves a power to revoke the trust by transaction inter vivos, as for example, by a notice to the trustee, he cannot revoke the trust by his will." Implicit in that statement is the notion that because a will has no effect during the trustor's lifetime, it cannot provide inter vivos notice of revocation. Comment (j) reflects a policy of requiring certain formalities because they help to minimize ambiguity and thus ensure the proper and appropriate administration of trusts. However, that policy does not logically explain why a will, upon delivery, cannot provide effective and immediate notice of a trustor's intent to revoke. Moreover, although the dispositional provisions of a will remain inoperative until the trustor's death, it does not necessarily follow that the will cannot separately and effectively have a present and immediate effect upon delivery, such as notice of intent to revoke. For example, suppose a person writes a will and in it states that he loathes his brother and bequeaths to him a bag of garbage. He then gives the will to his brother. Although the bequest is legally inoperative, the will nevertheless immediately and effectively communicates the person's feelings to his brother. We perceive no logical reason why a will similarly cannot provide immediate and present notice of a trustor's intent to revoke a trust. Indeed, where a trustor unambiguously manifests an intent to revoke, amend, or alter a trust in a will, and where the trustor delivers it to the trustee, who reads it, we believe the trustor's intent must control and be given effect. (See *Newman v. Wells Fargo Bank* (1996) 14 Cal.4th 126, 134 [59 Cal.Rptr.2d 2, 926 P.2d 969] [" ' "The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible" ' "].) Moreover, neither a rigid and mechanical view of wills as inoperative for any purpose until the testator's death nor a policy that insists on documentary formalities to promote the regularity of trust administration provides a compelling reason to disregard the trustor's unambiguous intent.

We acknowledge that the language of Comment (j) or similar language has been widely adopted. (E.g., *In re Last Will and Testament of Tamplin* (Alaska 2002) 48 P.3d 471 [where trust is silent on method of revocation, will did not revoke]; *Gabel v. Manetto* (1981) 177 N.J. Super. 460 [427 A.2d 71, 74] ["Since a will does not take effect until after a testator's death, it is not the proper instrument to revoke a trust when the power to do so is an *inter vivos* power"]; *Barnette v. McNulty* (1974) 21 Ariz.App. 127 [516 P.2d 583, 586]

[power to revoke during lifetime not exercised by will]; 76 Am.Jur.2d, Trusts, § 77, p. 129 ["As a rule, a will cannot terminate a trust where the power to revoke the trust ends with the settlor's death"]; Annot. (1977) 81 A.L.R.3d 959, 961 ["A general testamentary disposition is an ineffective exercise of a reserved power to revoke by written instrument, even if the executed will is delivered to the trustee before the settlor's death"].)

However, adoption of Comment (j) has not been unanimous or universal. In *In re Estate of Davis* (1996) 109 OhioApp.3d 181 [671 N.E.2d 1302], the trustor reserved the power to revoke or amend the trust during his lifetime. The trustor died, and his will referred to property and the trust but then disposed of the property in a way different from that in the trust, eliminating one beneficiary and increasing the amounts distributed to the others. The legal issue before the court was whether the trustor's will could amend or revoke the trust. (*Id.* at p. 1303.) The court explained that if a trustor retains a restricted right to amend or revoke during his life, then a revocation or amendment is valid only if it takes effect before his death. (*Ibid.*) The court acknowledged the general rule that a will does not take effect until the testator's death. (*Id.* at p. 1304.) However, the court recognized an exception: "[A] will can operate as an *in praesenti* instrument capable of revoking or amending a revocable trust during the life of the settlor where the settlor uses language [that] appropriately manifests an intention to do so. [Citation.] [¶] 'An instrument [that] contains language appropriate to two or more different types of instruments will be construed in accordance with the intention of the testator as deduced from the instrument as a whole and from any extrinsic evidence that might be introduced . . . .' [Citation.]" (*Ibid,* fn. omitted.) Turning to the facts before it, the court concluded that the record revealed an intent to amend the trust. The court noted that the trustor mentioned the trust and trustee. Although he did not expressly use the word "revoke" or "amend" or repeat the distribution directions in the trust, he significantly altered the distribution. Thus, because the will manifested the trustor's intent to immediately amend the trust, the court held that it separately operated as an *"in praesenti* instrument [and] effectively amended the trust terms." (*Ibid.*; see *First National Bank of Cincinnati v. Oppenheimer* (1963) 23 OhioOp.2d 19 [92 OhioLawAbs. 233, 190 N.E.2d 70] [acknowledging potential dual character of a will as present notice of revocation and testamentary disposition]; *Estate of Lowry* (1981) 93 Ill.App.3d 1077 [418 N.E.2d 10, 49 Ill.Dec. 366] [same]; *Sanderson v. Aubrey* (1971) 472 S.W.2d 286 [same]; *Euart v. Yoakley* (1984) 456 So.2d 1327 [same].)

We agree with the analysis in *Davis* and consider it applicable to not just the amendment of a trust but also its revocation.

Last, we decline to adopt and apply the last sentence of Comment (j) for another reason. Section 15401, subdivision (a)(1) permits revocation by *any* method provided in the trust. Here, the Trust permitted Pulizevich to revoke

via "written notice," which, as construed, means that she could give herself notice using any form of writing that unambiguously manifested her intent to revoke, including a will. The statutory authorization in section 15401, subdivision (a) must govern over contrary language in a Restatement comment.

### A Trust Need not Specifically and Expressly Authorize Revocation by Will

Gardenhire contends that under section 15401, a trustor may make a trust revocable by will, but he or she must do so in a specific and express provision. She claims that this requirement becomes apparent when subdivision (a)(1) and (2) are read together. According to Gardenhire, the two provisions establish that "the necessary 'writing' to accomplish any type of revocation or amendment cannot be in the form of a 'will,' unless it is so specified in the trust instrument." In support of her view, Gardenshire cites the Law Revision Commission comment to section 15401, which reads, in pertinent part, "The settlor may revoke a revocable trust in the manner provided in [section 15401] subdivision (a)(2), unless there is a contrary provision in the trust. This changes the rule under prior case law.[6] [Citation.] The settlor may not revoke a trust by a will under subdivision (a)(2), even if the will purporting to revoke is delivered to the trustee during the lifetime of the settlor. *However, the settlor may revoke by will if the trust so provides, pursuant to subdivision (a)(1).* [Citation.]" (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) foll. § 15401, p. 571, italics added.) Gardenhire argues that this comment reflects a legislative intent to allow revocation by will *only* when the trust specifically and expressly authorizes it. Any other interpretation would be inconsistent with that intent and render the last sentence of the comment, italicized above, meaningless and superfluous.

■ "The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.]" (*Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].) To find intent, we first turn to the words of the statute. Viewing them in context and in light of the nature and obvious purpose of the statute, we give the words their plain, everyday, commonsense meaning. If we find no ambiguity or uncertainty, we simply presume the Legislature meant what it said, which makes further inquiry into legislative intent unnecessary. However, if we find the statutory language susceptible of more than one reasonable interpretation, we may then turn to extrinsic indicia of intent, such as legislative history, public policy, and the statutory scheme of which the

---

[6] The "change" in the law appears to be that before section 15401, courts had held that where a trust provides a method of revocation, that method must be followed rather than the statutory method. Section 15401 now allows revocation by the statutory method in subdivision (a)(2) unless the trust explicitly makes the method set forth in the trust the exclusive method of revocation. (See Recommendation: The Trust Law (Dec.1985) 18 Cal. Law Revision Com. Rep. (1986) pp. 567–568.)

statute is a part. (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129]; *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192 [96 Cal.Rptr.2d 463, 999 P.2d 686]; *People v. Alvarado* (2001) 87 Cal.App.4th 178, 185–186 [104 Cal.Rptr.2d 624]; *People v. Rackley* (1995) 33 Cal.App.4th 1659, 1665–1666 [40 Cal.Rptr.2d 49].) However, "[i]t is our task to construe, not to amend, the statute. 'In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted . . . .' [Citation.] We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings and Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].)

 The legislative intent that Gardenhire sees so clearly in the statutory language is not readily or reasonably apparent to us. As noted, section 15401, subdivision (a)(1) allows a trust to provide *any* method of revocation. If the trust is silent and does not provide a method, then section 15401, subdivision (a)(2) allows revocation by a writing, other than a will, signed and delivered by the trustor to the trustee during the trustor's lifetime.[7] If the trust is not silent and instead provides a method of revocation, then section 15401, subdivision (a)(2) is inapplicable. On its face, the statute does not require that a trust contain a specific and express provision authorizing revocation by will. Nor does subdivision (a)(2) represent a proviso to subdivision (a)(1) to the effect that although a trust may provide *any* method of revocation, if the trustor wants to allow revocation by will, then he or she may not use general language, such as *written notice,* that would necessarily encompasses a will; rather the trustor must instead expressly specify that a will can constitute written notice.[8] Moreover, we do not find the statute ambiguous concerning whether subdivision (a)(1) implicitly requires an express provision if a trustor wants to authorize revocation by will.

Gardenhire's reliance on the Law Revision Commission comment does not convince us that the statute contains such a requirement or that the Legislature intended to impose one. The comment merely states that a trustor must provide in the trust for revocation by will. It does not state that under section 15401, subdivision (a)(1), a trustor must specifically and expressly provide for revocation by will or that a trust may not provide for revocation by will in

---

[7] In expressly excluding wills, section 15401 subdivision (a)(2) appears to embody Comment (j) and the notion that a will cannot revoke a trust. However, subdivision (a)(2) of section 15401 provides a default method of revocation where the trust is silent on revocation or does not explicitly provide the exclusive method.

[8] Insofar as *Rosenauer, supra,* 30 Cal.App.3d 300 and *Linstrom, supra,* 191 Cal.App.3d 375 suggest otherwise, we respectfully disagree. We note, however that both cases arose before section 15401 was enacted.

general language that would necessarily encompass a will. Moreover, any apparent ambiguity in the comment does not mean that the statute is ambiguous. Consequently, if the plain meaning of unambiguous statutory language renders the last sentence of the comment meaningless and superfluous, then so be it, for it is the Legislature's words that govern, not those used by the Law Revision Commission.

### DISPOSITION

The petition for a writ of mandate is denied.

Premo, J., and Elia, J., concurred.

A petition for a rehearing was denied April 21, 2005, and the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied June 8, 2005.