[No. B201185. Second Dist., Div. Six. Sept. 4, 2008.]

JOETTE MASRY, as Trustee, etc., Plaintiff and Appellant, v.
LOUIS MASRY et al., Defendants and Respondents.

JOETTE MASRY, Plaintiff and Appellant, v.
LOUIS MASRY, as Cotrustee, etc., et al., Defendants and Respondents.

## COUNSEL

Mitchell Silberberg & Knupp, Peter B. Gelblum, Jeffrey K. Eisen, Nahla B. Rajan and Jacey L. Hayes for Plaintiff and Appellant.

Weston, Benshoof, Rochefort, Rubalcava & MacCuish, John M. Rochefort, Michael D. Bradbury, Todd Benoff and Alan D. Hearty for Defendants and Respondents.

## OPINION

**GILBERT, P. J.**—How may a settlor revoke a revocable trust? Probate Code section 15401, subdivision (a)(1), (2) provides the answer: (1) by compliance

with the method stated in the trust and (2) by a writing (other than a will) signed by the settlor and delivered to the trustee during the lifetime of the settlor. Subdivision (a)(2) also tells us that its provisions do not apply if the trust instrument *explicitly* makes its language the exclusive method of revocation.[1]

A husband and wife are trustors and trustees of a family trust. The trust provides that each of the trustors has the power to revoke the trust during their joint lifetimes by written direction delivered to the other trustor and to the trustee.

Here, husband executed a revocation of the trust but did not deliver the notice of revocation to his wife. Wife received notice of the revocation after his death.

■ We conclude, among other things, the revocation provision in the trust was not explicitly exclusive, and husband's method of revocation complied with Probate Code section 15401, subdivision (a)(2). We affirm.

## FACTS

In 2004, Edward Masry and appellant Joette Masry, husband and wife, created the Edward and Joette Masry Family Trust (Family Trust), which consisted of the property acquired during their marriage. Each was a trustor and trustee. Section 2.1 of the Family Trust provides for revocation. It states in pertinent part: "Each of the Trustors hereby reserves the right and power to revoke this Trust, in whole or in part, from time to time during their joint lifetimes, by written direction delivered to the other Trustor and to the Trustee."

A little over a year after the Family Trust was created, and shortly before his death, Edward executed a "Notice of Revocation of Interest in Trust and Resignation as Trustee." His purpose was to transfer his assets from the Family Trust to a new trust, the Edward L. Masry Trust (Edward Trust). He

---

[1] Probate Code section 15401 states, in pertinent part:

"(a) A trust that is revocable by the settlor may be revoked in whole or in part by any of the following methods:

"(1) By compliance with any method of revocation provided in the trust instrument.

"(2) By a writing (other than a will) signed by the settlor and delivered to the trustee during the lifetime of the settlor. If the trust instrument explicitly makes the method of revocation provided in the trust instrument the exclusive method of revocation, the trust may not be revoked pursuant to this paragraph.

"(b) Unless otherwise provided in the instrument, if a trust is created by more than one settlor, each settlor may revoke the trust as to the portion of the trust contributed by that settlor, except as provided in Section 761 of the Family Code."

designated two of his children from a previous marriage, respondents Louis Masry and Louanne Masry Weeks, as successor cotrustees. Joette was not given notice of the revocation until two weeks after Edward's death.[2]

Joette filed a revocation petition and a petition to ascertain beneficiaries. She argued, among other things, that Edward's revocation was invalid because she was not given notice during his lifetime. The trial court found that the Family Trust did not explicitly make delivery of the revocation to Joette, the other Trustor, during Edward's lifetime the exclusive method of revocation. The court ruled that Edward's delivery of the revocation to himself as trustee satisfied Probate Code section 15401, subdivision (b), and Family Code section 761. The trial court also ruled that respondents' civil action did not violate the no contest provision of the Edward Trust.

## DISCUSSION

### Revocation

How do we determine whether the trust document explicitly provides that its stated method of revocation is exclusive? We look to dictum in *Huscher v. Wells Fargo Bank* (2004) 121 Cal.App.4th 956 [18 Cal.Rptr.3d 27]. Dicta may not decide a case but can be persuasive and influence later cases. *Huscher*'s dictum, however, is so persuasive that it becomes the law here.

The issue in *Huscher* involved amendments to a trust under Civil Code former section 2280, the predecessor to Probate Code section 15401 enacted in 1986, but its reasoning applies to revocation. The right to revoke includes the right to modify. (*Huscher v. Wells Fargo Bank, supra*, 121 Cal.App.4th 956, 962, fn. 5, citing *Estate of Lindstrom* (1987) 191 Cal.App.3d 375, 385, fn. 11 [236 Cal.Rptr. 376].)

*Huscher* chronicled and analyzed the history of Civil Code former section 2280. Just before it was replaced by Probate Code section 15401, Civil Code section 2280 provided that every voluntary trust is revocable " '[u]nless expressly made irrevocable by the instrument creating the trust . . . .' " (*Huscher v. Wells Fargo Bank, supra*, 121 Cal.App.4th 956, 963.) The *Huscher* court concluded that language in trust documents that purports to revoke under Civil Code section 2280 is reasonably subject to an analysis of whether the language explicitly or implicitly makes the method of revocation exclusive. Under this analysis, one could argue that the language here, providing that notice of revocation be given by the trustor to the other trustor and the trustee, is implicitly exclusive.

---

[2] We use the parties' first names to ease the readers' task.

■ But this argument is less persuasive under current Probate Code section 15401, subdivision (a)(2). *Huscher* points out that "a modification method is explicitly exclusive when the trust instrument directly and unambiguously states that the procedure is the exclusive one." (*Huscher v. Wells Fargo Bank, supra,* 121 Cal.App.4th 956, 968.) We agree with respondents that section 2.1 of the Family Trust does not state that the method of revocation it provides is explicitly exclusive. It is simply one method of revocation in addition to that provided in Probate Code section 15401, subdivision (a)(2). Edward complied with section 15401, subdivision (a)(2), by giving notice to himself as trustee. If the language in the trust were sufficient to qualify as the explicitly exclusive method, then the language in section 15401, subdivision (a)(2) would be unnecessary.

Joette relies on *Conservatorship of Irvine* (1995) 40 Cal.App.4th 1334 [47 Cal.Rptr.2d 587]. For the reasons stated in *Huscher,* the *Irvine* case is not persuasive because it relies on cases interpreting Civil Code former section 2280, which are inapposite.

The parties rely on *Gardenhire v. Superior Court* (2005) 127 Cal.App.4th 882 [26 Cal.Rptr.3d 143], but cite different parts of the opinion to support their view of the meaning of Probate Code section 15401, subdivision (a)(2).

In *Gardenhire,* the trustor was also the trustee. After the trust was created, the trustor revoked the trust by executing a will in which she disposed of all her property. The appellate court held that the trustor revoked according to the method described in the trust, " 'written notice signed by the Trustor and delivered to the Trustee.' " (*Gardenhire v. Superior Court, supra,* 127 Cal.App.4th 882, 886.) This qualified as a writing in which the trustor gave notice to herself as trustee. Respondents point out that in this respect the notice was the same as the notice here. Like the trustor in *Gardenhire,* Edward revoked by giving notice to himself as trustee. Here the difference is that the trustor used a method provided in Probate Code section 15401, subdivision(a)(1), instead of the method provided in the trust.

Joette reads *Gardenhire* to hold that if the language of revocation in the trust is clear and express, then that is the exclusive method to revoke. *Gardenhire* states in dictum, "If the trust is not silent and instead provides a method of revocation, then [Probate Code] section 15401, subdivision (a)(2) is inapplicable." (*Gardenhire v. Superior Court, supra,* 127 Cal.App.4th 882, 894.) But were we to adopt the *Gardenhire* view, Probate Code section 15401, subdivision (a)(2) would be, at best, a clarification of Civil Code former section 2280, and not a change. *Huscher's* reasoning, albeit expressed in its dictum, compels us to conclude that, absent language in the trust that its method of revocation is exclusive, the trustor has the option of revoking

according to the method provided in Probate Code section 15401, subdivision (a)(2), delivering notice to himself as trustee. That there are two trustees here does not change our view. Under section 15401 subdivision (a)(2), Edward's notice to himself is sufficient as notice to "the trustee."

Nor does the method of revocation here violate Probate Code section 15401, subdivision (b). That section provides, "Unless otherwise provided in the instrument, if a trust is created by more than one settlor, each settlor may revoke the trust as to the portion of the trust contributed by that settlor, except as provided in Section 761 of the Family Code." Family Code section 761, subdivision (b) provides, "Unless the trust instrument expressly provides otherwise, a power to revoke as to community property may be exercised by either spouse acting alone."

Joette argues that such an interpretation of Probate Code section 15401 and its subdivisions is not good public policy, because it allows a "secret" revocation and represents one spouse taking advantage of the other. It is true that had Joette been given notice of the revocation as provided in the Family Trust, she could have tried to persuade Edward to change his mind or could have made changes in the disposition of her community share of the trust property.

But married parties are permitted to dispose of their share of the community without the consent of the other spouse. And if the Legislature sees an overriding public policy argument that the method of revocation used here violates public policy, it can certainly once again amend the statute.

### The No Contest Clause

The Edward Trust contains a "Disinheritance/No Contest Clause." It provides in part in paragraph 14.4(A)(1), "An obstructing Beneficiary absolutely forfeits any and all beneficial interests which the Beneficiary might otherwise have under this Trust Agreement."

In 2004, Edward entered into an employment agreement with his law firm, Masry & Vititoe. The agreement provided that if termination occurred because of Edward's death, the benefits would go "to the legal representatives of [Edward's] estate" if no valid beneficiary designation were in place. We agree with respondents that when Edward revoked his interest in the Family Trust, Edward's community share of his benefits under the employment agreement was placed in the Edward Trust.

The Edward Trust states that its property includes Edward's interest in the law firm of Masry & Vititoe. That interest of necessity includes his interest in

the employment agreement. Before the Family Trust was revoked, the clause pertaining to the designation of beneficiary in the employment agreement provided that Joette would receive all the benefits as trustee. After the revocation of the Family Trust, Joette is no longer a trustee, but is a beneficiary of her community interest in the employment agreement. We therefore reject her contention that she is entitled to all the interest in the employment agreement.

Respondents, as representatives and trustees of the Edward Trust, filed a civil action against the law firm with causes of action for an accounting, specific performance, and imposition of constructive trust, but then they dismissed the action.

■ Suffice it to say, the Probate Code enforces no contest clauses "against a beneficiary who brings a contest within the terms of the no contest clause." (Prob. Code, § 21303.) Here respondents, the representatives of Edward's estate, had a duty to gather the assests of the Edward Trust. However they characterized the causes of action in their complaint, they did not run afoul of the no contest clause. (See *Estate of Coplan* (2004) 123 Cal.App.4th 1384 [20 Cal.Rptr.3d 686].)

The judgment is affirmed. Costs are awarded to respondents.

Yegan, J., and Perren, J., concurred.

A petition for a rehearing was denied October 3, 2008, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 19, 2008, S167490.