Filed 7/8/21  Bishop v. Hayon CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ALYSA MACKENZIE BISHOP, | B302751 |
| Petitioner and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. 18STPB06791) |
| ESTHER PELED HAYON, et. al., | |
| Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Clifford Klein, Judge.  Affirmed.

Benedon & Serlin, Gerald M. Serlin and Melinda W. Ebelhar, Appellants.

Holland & Knight, Vivian L. Thoreen, Roger B. Coven and Vivian M. Rivera for Petitioner and Respondent.

_____

This case arises from a family trust. Although a number of issues were disputed by the parties, this appeal is limited to one: whether certain properties that at one time were placed in trust remained in the trust at the time the second trustor died. This, in turn, requires consideration of whether, after the death of the first trustor, the second trustor partially revoked the trust (to the extent the trust was then revocable). The trial court concluded the trust was not revoked and the properties therefore remained in the trust. We agree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**1.** **The Trust is Executed**

The trust at issue is the Albert R. MacKenzie and Cynthia J. Steinberg Revocable Trust, executed by spouses MacKenzie (Husband) and Steinberg (Wife). They entered into the trust on February 25, 2013, identifying themselves as the original trustees. They attached a schedule of assets which they conveyed into the trust. The schedule contained broad language indicating the trustors transferred into the trust (subject to some inapplicable exceptions) "all . . . property, whether real or personal, tangible or intangible, that they own now or acquire later during their lifetimes . . . ." We are not concerned with the interpretation of that clause. The parties transferred to the trust several identified real property assets, "whether community property or separate property or otherwise," including their family home and two properties in Idaho. It is those specifically-scheduled properties which are in dispute.

**2.** **Husband Dies; Wife Fails to Divide the Trust into Subtrusts**

Husband died November 1, 2013. According to the terms of the trust, when one spouse died, the surviving trustor, who was

2

also the trustee, would divide the trust into two shares which would then fund subtrusts.  The Survivor's share would fund the Survivor's Trust, which the surviving settlor could "amend, revoke, or terminate, in whole or in part."[1]  The remaining Nonmarital share would fund the Bypass Trust, which "shall become irrevocable and shall not be subject to amendment after the death of the deceased settlor."  In addition to the split into subtrusts, upon Husband's death, the trustee was directed to distribute to Wife certain personal property, including household effects, furniture, art, jewelry, antiques, and automobiles.

Husband and Wife had no children together, but husband had three adult children, one of whom, Alysa Bishop, was identified as successor trustee.  In the event Husband predeceased Wife (as he did), Bishop was identified as the residual beneficiary of the Bypass Trust, and the default beneficiary of the Survivor's Trust, if Wife failed to appoint any other beneficiary.

Upon Husband's death in November 2013, Wife became the sole trustee of the trust. Although the Trust required her, as the sole trustee, to separate the assets into the Survivor's Trust and the Bypass Trust, she did not do so.

---

[1]     The Survivor's share was defined as the survivor's 1/2 interest in the community property, 1/2 interest in the deceased settlor's quasi-community property, and all of the survivor's separate and quasi-community property.  That is, the division between the subtrusts was not simply an equal division of the trust assets, but turned on the separate or community nature of each particular asset.

### 3. *An Estate Planning Attorney Advises Wife of Her Obligations*

In October 2015, Wife went to see Attorney John Kohlbrand (Attorney) who specialized in estate planning. She wanted to discuss whether she would have to pay a particular debt Husband had personally guaranteed. Either during or following the meeting, Wife and Attorney discussed the trust and Attorney learned that "she had not completed any of the steps that [he] would have assumed the trust would call for at the time of the first death." When he asked her what steps she had taken, Wife stated she did not know that anything had to be done. Attorney asked her about the trust assets; Wife had no idea what that meant and no idea whether assets were held in or out of the trust.

Wife talked about her "premarital" property and said she wanted to maintain control over it, but had no knowledge whether it was in or out of the trust. Attorney, who had not reviewed the trust document at this point, told Wife that if she wanted to control her premarital assets, the best way to do so would be to create a separate property trust. Having not reviewed the trust, Attorney could only speculate as to what he expected to find within the document; he believed it would likely include a requirement to divide the assets. He explained that they would have to do a trust amendment to reflect the division. Wife said there was an accountant who was working on the division of assets.

After the meeting, and after he had reviewed the trust document, Attorney sent Wife a letter outlining issues "that must be resolved" as a result of Husband's death. It was a lengthy list of "the legal steps which must be completed." It included, among

other things, the requirement to obtain a complete list of assets comprising the estate at the time of Husband's death, and the date of death valuations of those assets (including real estate appraisals). It specifically stated, "As a result of your Estate Plan and to fully implement the terms intended by your Trust, we must now complete an Amendment to the Trust to reflect that you are taking the steps required, under the Trust, to carry out the division of the Trust Assets which is called for to be made at the time of the first death." Attorney's letter specifically references the need to amend the trust to reflect the division of assets into the Survivor's Trust and the Bypass Trust.

Wife did none of these things.

### 4.    *Wife Executes a Will and a Trust Amendment*

Approximately one year later, on September 29, 2016, Wife executed a trust amendment, naming her caretaker, Esther Hayon, as the successor trustee in the place of Husband's daughter, Bishop. She also executed a will, which appointed Hayon as executor and identified a number of beneficiaries, including Hayon.[2] The genesis of these documents is as follows:

Eleven months after Wife's first visit to Attorney, Wife returned to Attorney's office. Attorney believed that they would be discussing the status of the items in his letter, but this was not Wife's purpose. Instead she told him she wanted to make sure her "premarital" assets passed outside the trust. Attorney discussed the possibility of a separate property trust, but noted

---

[2]    The other designated beneficiaries are Michael Vavrin, Joyce Shaw, Curtis Shaw, and Henry Birnbaum. They are all parties to this case. For our purposes, Hayon represents their interests.

that they needed to first determine "what is titled in the trust and what isn't."

Wife wanted to execute documents at that meeting that would effect what she considered to be her separate property. She seemed to be pressed for time and fidgety. Attorney would later testify: "What I told her was that there were several things that we needed to know to – to accomplish her objectives. And among those were how were the titles held, and also that an amendment might be necessary that we didn't have time to deal with or address that day she was there. [¶] Her comment was: I want to sign something before I leave the office today. I want you to do something. [¶] And at that point I did the – I draft, just while she was sitting there, I put together that will, and I – I had done – I had a previous draft of the amendment to the trust that I had sent her, back in 2015, and I took that document and just pulled out the part where she wanted her – deleted everything in that document except the part that named Ms. Hayon as the trustee. [¶] And so she signed both of those documents that day. But I told her it was essential that she follow up, because we needed to document further documents to make things absolutely correct." Wife took notes during the meeting and knew that she had to come back to complete the process.

Wife never returned. She died a few months later, on December 7, 2016.

## 5. *The Dispute Arises*

After Wife died, Hayon took certain actions on the assumption that certain properties had, in fact, been removed from the trust and were part of wife's estate, subject to her control as executor. Litigation began on July 20, 2018, when Bishop, Husband's daughter, brought a petition against Hayon

6

for, among other things, a determination that the properties were, in fact, owned by the trust.[3]  (Prob. Code, § 850, subd. (a)(3)(B).)  She claimed Hayon had breached her fiduciary duty as successor trustee and was liable for the wrongful taking of trust property.

Hayon responded to the petition and, as purported trustee of the trust, petitioned the court for instructions as to how to distribute the limited assets she believed remained in the trust. She also claimed that Bishop's petition violated a no contest clause.

**6.**    ***Briefing on the Key Issue***

The trial court did not resolve all of the issues at once.  On August 21, 2019, the court indicated that it would hold a hearing on the specific issue of whether the properties had been placed in, and/or had been removed from, the trust.  Hayon took the position that the schedule to the trust had not been sufficient to transfer the real properties to the trust; she argued that a change in recorded title was required.  She further argued that the trust amendment and will executed by Wife on September 29, 2016, were sufficient to divide the Trust into the two subtrusts and direct distribution of the Survivor's Trust to the will's beneficiaries.  She argued that the will either modified the Survivor's Trust or revoked it entirely, thereby freeing those assets for distribution via will.  Bishop disagreed, arguing that

---

[3]      The operative petition is Bishop's First Amended Petition. In it, she asks that the court determine that the marital home, the two properties in Idaho, two Merrill Lynch accounts "and any other property or properties which are rightfully assets of the Trust but have been treated as assets of the probate estate . . . be determined by this Court to be assets of the Trust and subject to disposition pursuant to the terms of the Trust."

7

the properties were indisputably transferred into the trust, and that Wife never did anything to effectively transfer them out.

On September 17, 2019, a hearing was held, and the court took the issue under submission. The only witness to testify at the hearing was the Attorney.

### 7. *The Court's Orders and the Limited Scope of the Appeal*

The court issued two orders. On September 23, 2019, it made an order on Hayon's petition for instructions, but specifically deferred ruling on the issue of whether the properties were assets of the trust estate.

Then, on October 1, 2019, the court ruled on the deferred issue, concluding that the properties had been placed in the trust and that the trust had not been revoked. The court found that Wife had, in fact "wanted the disposition of her separate property, whenever she could identify the parcels, to be distributed outside of her trust to her heirs." However, despite having two meetings with Attorney, Wife "took no action after either meeting to draft a revocation of any part of the trust established by herself and her late husband." Her trust amendment modified the successor trustee but otherwise expressly indicated the trust remained unchanged; her will revoked prior wills but did not mention the trust. Therefore, the trust was not revoked and the properties remained in the trust. The court continued the matter for trial on the remaining issues. Hayon filed a notice of appeal from only the October 1, 2019 order.

## *DISCUSSION*

### 1. *The Order is Appealable*

Bishop filed a motion to dismiss the appeal, arguing the October 1, 2019 order was non-appealable. We deferred ruling on the motion to dismiss and now deny it.[4] An order made appealable by the Probate Code is appealable. (Code Civ. Proc., § 904.1, subd. (10).) Probate Code section 1300, subdivision (k) states that an order adjudicating the merits of a claim made under section 850 is appealable. Section 850, subdivision (a)(3)(B) provides that a trustee or interested party may petition the court for a ruling when the trustee has a claim to property, "title to or possession of which is held by another." The October 1, 2019 order resolved Bishop's claim, under that subdivision, that the properties claimed by Hayon to be part of wife's estate were, in fact, trust property. The order is therefore appealable. (*Estate of Dayan* (2016) 5 Cal.App.5th 29, 39; *Estate of Redfield* (2011) 193 Cal.App.4th 1526, 1534.)

### 2. *The Properties Were Placed In the Trust*

In her brief on appeal, Hayon no longer pursues her argument that the properties were not placed in the trust. The implied concession is appropriate. The law is clear that, when a trustor is also the trustee, trust language purporting to transfer the property to the trust is sufficient to effect the transfer; a deed transferring title is not necessary. (*Estate of Heggstad* (1993) 16 Cal.App.4th 943, 950.)

---

[4] The motion to dismiss was filed before briefing. In her respondent's brief on appeal, Bishop changes position and argues that the order is appealable.

**3.** ***The Trust Amendment and Will Cannot Be
Interpreted to Transfer the Property or Revoke the
Trust***

A. *Standard of Review*

We interpret written instruments de novo and review the
probate court's resolution of disputed facts for substantial
evidence. (*Estate of Dayan, supra,* 5 Cal.App.5th at p. 36.) Our
review of whether property was transferred, on undisputed facts,
is de novo. (*Carne v. Worthington* (2016) 246 Cal.App.4th 548,
555-556.)

" 'The basic rule in the interpretation and construction of
any will is that the intention of the testator must be carried out
as nearly as possible. [Citations.] In ascertaining the testator's
intent, courts employ an objective test: the intention to be
determined is that which is *actually expressed* in the language of
the will. [Citations.] " 'The intention which an interpretation of
a will seeks to ascertain is the testator's intention as expressed in
the words of the will, not some undeclared intention which may
have been in his [or her] mind.' [Citation.]" [Citation.]' "
(*Schwan v. Permann* (2018) 28 Cal.App.5th 678, 685.) We are
therefore not concerned with Wife's intention in the abstract, but
with her intention as expressed in the documents she signed.

Hayon posits the trust amendment separated the trust
assets into the Survivor's Trust and Bypass Trust, and the Will
either impliedly removed the assets from the Survivor's Trust or
revoked it entirely. We turn to those documents.

B. *The Trust Amendment Did Not Divide the Trust Into
Subtrusts*

We first turn to the language of the trust amendment
executed by Wife. The two-page amendment contains four

10

provisions. The first acknowledged that Husband had died on November 1, 2013, represented that the effective date of the amendment was the date of his death, and stated, "The Trust calls for certain events to occur upon the death of the first Settlor. This Amendment implements the terms of the Trust that require a division of the Trust Estate upon the death of the first Settlor." This provision is not mentioned again.

The other three provisions of the trust amendment changed the successor trustee from Bishop to Hayon, added a no contest clause, and stated, "In all other respects the [trust] remains unchanged."

Hayon argues that the language stating the amendment "implements the terms of the Trust that require a division of the Trust Estate" actually divided the trust into the two subtrusts. But it did not. There was no attempt to actually divide the assets, no mention of the Survivor's Trust or Bypass Trust, and no attached schedule of assets. Attorney testified that although this language was present, he had advised Wife that more was required to effect the division, and that she did not execute the necessary documents. " 'The [drafting] attorney's testimony, although not conclusive, is entitled to much weight.' [Citation.]" (*Wilkin v. Nelson* (2020) 45 Cal.App.5th 802, 811.) Regardless of wife's desires, the trust amendment only changed the successor trustee; it was a hollowed-out draft presented to wife for execution because she demanded to sign *something* that day, but the attorney explained to her that it was, in fact, insufficient to put into effect her intent to distribute her separate property outside of the trust.

C.    *The Will Did Not Revoke the Survivor's Trust*

Even if the trust amendment could be interpreted to divide the trust into the two subtrusts, we would conclude that the will Wife executed simultaneously with the trust amendment did not revoke the Survivor's Trust in whole or in part.  The will contains six terms:

(1) a testamentary declaration revoking all previous wills and codicils, but making no mention of trusts;

(2) a clause representing Wife is not currently married and has no children;

(3) a clause giving effect to any "letter or other instructions regarding the disposition of some or all of the personal property, furniture, clothing, and jewelry," and if no such letter exists, indicating that property is part of the residue of the estate;

(4) a gift of the residue to the identified beneficiaries and noting Husband's children are intentionally omitted;

(5) a clause appointing Hayon executor and granting her powers over the real and personal property of the estate; and

(6) a no contest provision.

None of these terms expressly removes any property from the Survivor's Trust or revokes the Survivor's Trust.  Relying on *Gardenhire v. Superior Court* (2005) 127 Cal.App.4th 882 (*Gardenhire*), Hayon argues that the will impliedly revoked the Survivor's Trust.  *Gardenhire* held that, when a trust allows revocation by the trustor delivering a writing to the trustee – as does the trust here – the trustor can make an effective revocation in a will, when the trustor is also the trustee.  (*Gardenhire, supra,* 127 Cal.App.4th at p. 888.)  The rationale is that, while a will is largely a forward-looking testamentary document, it can also have a non-testamentary element which can be given

12

immediate effect. (*Id.* at pp. 891-892.) We agree with the rule in *Gardenhire*: Wife had the legal ability to revoke the Survivor's Trust herself by giving notice of such revocation in her will. But this does not resolve the issue of whether any language in her will constituted such notice.

The will did not expressly purport to revoke any trust at all; it only mentioned the revocation of prior wills and codicils. In *Gardenhire*, the revocation was made impliedly. The trustor's will mentioned her intent to dispose of all real and personal property she had the right to dispose of by will and included specific language providing that a certain beneficiary could live in an apartment on an identified piece of property which the trustor had previously placed in the trust. (*Gardenhire, supra,* 127 Cal.App.4th at pp. 885-886.) While the appellate opinion in *Gardenhire* did not address the sufficiency of this evidence, we infer that the *Gardenhire* trial court concluded that the trustor, by making disposition of a property she had previously placed in trust, intended by her will to revoke that trust. There is no similar language in Wife's will. She did not identify or purport to direct disposition of any specific property previously placed in the trust, sufficient to give rise to an intention to remove that property or any property from the trust. She expressly mentioned only "personal property, furniture, clothing, and jewelry," but all of that property was removed from the trust and transferred to her outright upon Husband's death. On appeal, Hayon suggests that the will's mention of real property in the context of the executor's powers to sell or lease "real or personal property of my Estate" must have implied that she believed there was real property in her estate and, further, that such real property was comprised of the real properties previously in the

13

Survivor's Trust (which Hayon believes arose by the trust amendment separating the trust into subtrusts).[5]  We are not persuaded.  The clause in question is no more than a general reference to the executor's powers; it neither identifies nor disposes of any particular property.

D.    *Conclusion*

In sum, Hayon would interpret the trust amendment and will to match wife's intent to dispose of her "premarital" property outside the trust.  But we may not casually bend the language of a will to meet the unexpressed desires of the testator.  (*Schwan v. Permann, supra,* 28 Cal.App.5th at p. 685.)  As explained above, we interpret the testator's intention as expressed in the words of the will.  Here, the words of the will and the simultaneously executed trust amendment did not separate the trust assets into the necessary subtrusts and did not revoke the trust.  Far from revoking the trust, the trust amendment confirmed the trust, stating, "In all other respects the [trust] remains unchanged."

Hayon argues that if the will mistakenly did not express wife's intentions, "it nevertheless should be interpreted in accord with those intentions." (Capitalization omitted.)  We understand this argument as invoking reformation of a will. In *Estate of Duke* (2015) 61 Cal.4th 871, our Supreme Court concluded that wills could, in fact, be reformed:  "We conclude that the categorical bar on reformation of wills is not justified, and we hold that an unambiguous will may be reformed if clear and convincing evidence establishes that the will contains a mistake in the

---

[5]    Similarly, she suggests that the will's disposition of the estate's "residue" after having accounted for personal property must imply that she believed there was real property in her estate.

14

expression of the testator's intent at the time the will was drafted and also establishes the testator's actual specific intent at the time the will was drafted." (*Id.* at p. 875.)

Reformation of a will involves the court's equitable powers, reviewed for abuse of discretion. (*Wilkin v. Nelson, supra,* 45 Cal.App.5th at pp. 809-810.) At the hearing, Hayon argued that the will actually revoked the trust; she did not argue that the will should be reformed to revoke the trust. In her opening brief on appeal, she cited to authority regarding reformation in the course of her argument that the will revoked the trust. Bishop responded that reformation was not sought before the trial court. In her reply brief, Hayon argues that reformation is unnecessary because she can prevail simply by interpreting the language of the will in light of Wife's intent. However, she goes on to argue that there is no hard and fast line between interpretation and reformation; the two are instead part of a continuum. But she never asked the court to exercise its equitable discretion to reform the will, and does not suggest that she did. We cannot review for abuse of discretion a decision the trial court never made.

### *DISPOSITION*

The order is affirmed. Bishop shall recover her costs on appeal.


RUBIN, P. J.

WE CONCUR:



BAKER, J.                                KIM, J.

15