Filed 2/24/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| MARY A. NIVALA BALISTRERI, as Trustee, etc.,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>SAL J. BALISTRERI,<br><br>     Defendant and Respondent. | A162222<br><br>(San Francisco City & County Super. Ct. No. PTR-20-303610) |


Mary A. Nivala Balistreri filed a petition in probate court alleging that, the day before her husband, Sal C. Balistreri, (decedent) died, the two amended their revocable trust. The probate court subsequently deemed the alleged amendment "null and void" and denied Mary's petition to construe the trust and confirm the validity of the amendment. The court concluded the claimed amendment was invalid under Probate Code section 15402[1] because the trust mandated that any amendment "shall be made by written instrument signed, with signature acknowledged by a notary public," and the amendment was not so acknowledged.

Mary appeals. We affirm and hold that, when a trust specifies a method of amendment — regardless of whether the method of amendment is exclusive or permissive, and regardless of whether the trust provides for

---

[1] Undesignated statutory references are to the Probate Code. We use family members' first names for convenience, intending no disrespect, and we recite only those facts necessary to resolve the issues on appeal.

1

identical or different methods of amendment and revocation — section 15402 provides no basis for validating an amendment that was not executed in compliance with that method.

## BACKGROUND

Mary and the decedent were married and had a daughter, Julia. The decedent also had children from prior marriages, including Sal and Christina.

In 2006, Mary and the decedent created a trust, which they restated, renamed, and amended in 2008. The documents restating, renaming, and amending the trust were notarized. In 2017, Mary and the decedent amended the trust a second time. That amendment was notarized too. On September 6, 2017, Mary and the decedent revoked the trust. Again, the revocation was notarized.

On that same date, Mary and the decedent created the Balistreri Family Trust (Trust), the trust at issue here. They named themselves trustors and trustees, and they placed community property located on 23rd Street in San Francisco (the property) in the Trust. Section 7.2.1 of the Trust provides that upon the decedent's death, the property "shall be distributed equally among" Julia, Sal, and Christina.

In section 5.2.1, a reservation of rights provision, Mary and the decedent agreed that the Trust "may be revoked or terminated, in whole or in part, by either of us as to any separate property of that trustor and as to any of our community property. During our joint lifetimes, this Trust may be modified and amended by either of us acting alone as to any separate property of that trustor, and by both of us acting jointly as to any of our community property." Section 5.2.4 mandates that "[a]ny amendment, revocation, or termination . . . shall be made by written instrument signed,

with signature acknowledged by a notary public, by the trustor(s) making the revocation, amendment, or termination, and delivered to the trustee."

Mary alleged that in February 2020, the decedent executed a document titled "First Amendment to Trust" (amendment) in his capacity as trustor. As relevant here, the amendment sought to strike section 7.2.1 — which would have distributed the property amongst Julia, Sal, and Christina upon the decedent's death — and states the property "shall remain in the trust." Mary and the decedent signed the amendment and "[a]ccepted and adopted" it as co-trustees. The amendment is not notarized. The decedent died the next day.

Mary thereafter petitioned to construe the Trust and for an order confirming the validity of the amendment. Mary acknowledged the Trust imposed a notary requirement but argued the amendment was effective notwithstanding the "lack of notarization" because section 5.2.4 did not delineate an exclusive amendment procedure. Thus — according to Mary — the Trust could be amended using the revocation procedure described in section 15401, subdivision (a)(2). Mary also posited that "a notary public's acknowledgement may serve a useful purpose when a trust settlor delivers a signed document to a third-party trustee," but it serves "no purpose" when the trustors and trustees "are the same people."[2]

Sal responded to Mary's petition and filed a petition of his own, to invalidate the amendment. He asserted the decedent "allegedly executed" the amendment, which was prepared by Mary, and that the amendment was

---

[2] In her opening brief, Mary argues "[t]here is no dispute" the "signatures on [the amendment] . . . are authentic." At oral argument, however, Sal's counsel indicated a dispute had been raised below; Sal also uses the term "alleged" when describing the decedent's signatures on the amendment.

void as it was not executed by the "[d]ecedent in the manner and form required" by the Trust and section 15402. Sal also maintained the amendment was void for the additional reason that the decedent was delusional in the days preceding his death, and that Mary exerted undue influence on the decedent with the intent to undermine his "testamentary wishes as delineated" in the Trust. Mary objected to Sal's petition.

At the parties' request, the probate court decided the validity of the amendment before reaching other issues in the parties' petitions. Relying on section 15402 and case law interpreting that statute, the court concluded the amendment was "null and void" because the decedent's "signature was not acknowledged by a notary public as required under [s]ection 5.2.4" of the Trust. The court denied Mary's petition to construe the Trust and to confirm the validity of the amendment.

## DISCUSSION

The de novo standard of review "applies to questions of statutory construction [citation] and to the interpretation of written instruments, including a trust instrument, unless the interpretation depends on the competence or credibility of extrinsic evidence or a conflict in that evidence." (*Pena v. Dey* (2019) 39 Cal.App.5th 546, 551 (*Pena*); *Burch v. George* (1994) 7 Cal.4th 246, 254.) "The paramount rule in construing [a trust] . . . instrument is to determine intent from the instrument itself and in accordance with applicable law." (*Brown v. Labow* (2007) 157 Cal.App.4th 795, 812.)

The Probate Code governs trust revocation and modification. Section 15401, subdivision (a) sets out two alternative methods for the *revocation* of a trust. Under the first method, a trust may be revoked by "compliance with any method of revocation provided in the trust instrument." (§ 15401,

4

subd. (a)(1).)  Under the second method, a trust may be revoked in "a writing, other than a will, signed by the settlor . . . and delivered to the trustee during the lifetime of the settlor."[3]  (*Id.*, subd. (a)(2).)  But, if "the trust instrument explicitly makes the method of revocation provided in the trust instrument the exclusive method of revocation," that method must be used.  (*Ibid.*; *Pena, supra*, 39 Cal.App.5th at pp. 551, 552.)  To do so, the trust must contain "an explicit statement that the trust's revocation method is exclusive."  (*Cundall v. Mitchell-Clyde* (2020) 51 Cal.App.5th 571, 581, 584.)  Thus, "section 15401, subdivision (a)(2) 'provides a default method of revocation where the trust is silent on revocation or does not explicitly provide the exclusive method.' "  (*Id.* at p. 587, italics omitted.)

Section 15402, by contrast, governs *modification* of a trust.  It states: "[*u*]*nless the trust instrument provides otherwise*, if a trust is revocable by the settlor, the settlor may modify the trust by the procedure for revocation." (§ 15402, italics added.)  Under section 15402, when "the trust instrument is silent on modification, the trust may be modified in the same manner in which it could be revoked, either statutorily or as provided in the trust instrument."  (*King v. Lynch* (2012) 204 Cal.App.4th 1186, 1192 (*King*).) When the trust instrument "*specifies* how the trust is to be modified," however, that "method must be used to amend the trust."  (*Id.* at pp. 1192, italics added, 1193.)  Section 15402 " 'recognizes a trustor may bind himself or herself to a specific method of . . . amendment of a trust by including that specific method in the trust agreement.' "  (*King*, at p. 1193.)

---

[3] Section 15401, subdivision (b) imposes additional obligations with respect to community property.  (See *Masry v. Masry* (2008) 166 Cal.App.4th 738, 743.)  The terms "trustor" and "settlor" are interchangeable and synonymous.  (See *In re Marriage of Perry* (1997) 58 Cal.App.4th 1104, 1109 & fn. 2.)

Thus, when a trust specifies an amendment procedure, a purported amendment made in contravention of that procedure is invalid. (*Pena*, *supra*, 39 Cal.App.5th at p. 552 [unsigned handwritten interlineation was invalid where trust provided "any amendment to the trust 'shall be made by written instrument signed by the settlor and delivered to the trustee' "]; *King*, *supra*, 204 Cal.App.4th at p. 1194 ["to be effective," the trust could be amended only according to specified method]; *Heaps v. Heaps* (2004) 124 Cal.App.4th 286, 290–291, 294 ["under the literal terms of the trust," trustors "had to write a memo to themselves (or its substantive equivalent) to amend the trust"]; *Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1209 [where trust "*expressly* deprived [the decedent] of the power to revoke, modify or amend," documents purporting to amend the trust were "invalid"]; *Conservatorship of Irvine* (1995) 40 Cal.App.4th 1334, 1343–1345 [amendment that did not comply with specified amendment procedure was "invalid"].)

Mary acknowledges section 15402 applies here. And, as she must, Mary concedes the Trust requires that an amendment "shall" be notarized and that the amendment here is not. But she argues it is of no moment, asserting she and the decedent were free to ignore the amendment procedure they included in the Trust in favor of the revocation procedure set forth in section 15401, subdivision (a)(2).

This argument was considered — and rejected — in *King*, *supra*, 204 Cal.App.4th 1186. There, a married couple's revocable trust permitted revocation by an instrument in writing signed by either settlor, and modification as to community property by an instrument in writing signed by both settlors. (*Id.* at pp. 1188–1189, 1194.) After one spouse was seriously injured, the other spouse executed several amendments to the trust pertaining to community property without the injured spouse's signature.

6

(*Id*. at pp. 1189–1190.)  The majority in *King* reasoned that the "trust specified a modification method and thus, under section 15402 the trust could only be amended in that manner.  The settlors bound themselves to a specific method of modification." (*Id.* at p. 1194.)  *King* held the purported amendments were invalid because they did not comply with the modification procedure described in the trust.  (*Ibid.*)

In urging *King* to conclude otherwise, the appellant argued the trust could be modified using the statutory revocation procedure "because the trust did not explicitly make the method of modification exclusive." (*King, supra,* 204 Cal.App.4th at p. 1192.)  The *King* majority disagreed.  It held that when "the Legislature enacted sections 15401 and 15402, it differentiated between trust revocations and modifications.  This indicates that the Legislature no longer intended the same rules to apply to both revocation and modification. [¶]  If we were to adopt appellant's position and hold that a trust may be modified by the revocation procedures set forth in section 15401 unless the trust explicitly provides that the stated modification method is exclusive, section 15402 would become surplusage.  Rather than enacting section 15402, the Legislature could have combined revocation and modification into one statute.  Moreover, as is evident from section 15401, the Legislature knew how to limit the exclusivity of a revocation method provided in a trust and chose not to impose such a limitation on modifications in section 15402." (*Id.* at p. 1193, fn. omitted.)

We concur.  As *King* correctly reasoned, section 15402's "qualification '[u]nless the trust instrument provides otherwise' indicates that if *any modification method is specified* in the trust, that method must be used to amend the trust." (*King, supra,* 204 Cal.App.4th at p. 1193, italics added.)  Here, the Trust requires an amendment to be notarized.  By including that

7

" 'specific method of . . . amendment' " in the Trust, Mary and the decedent expressed an intent to bind themselves to that method — indeed, a method they had repeatedly utilized in amending and revoking prior trusts — and they were not entitled to cast aside that procedure and amend the Trust using the revocation procedure set forth in section 15401, subdivision (a)(2). (*King*, at p. 1193.)

Mary insists *King* is distinguishable because the revocation and modification procedures in the trust at issue in that case differed, whereas the revocation and modification procedures here are identical. To support this argument, Mary points to the last sentence of *King*, where the court noted "the amendment provision [was] more restrictive than the revocation provision," and that a contrary holding — e.g., that the amendments were effective — "would cause the amendment provision to become superfluous and would thereby thwart the settlors' intent." (*King*, *supra*, 204 Cal.App.4th at p. 1194, fn. omitted.) Relying on this sentence, Mary urges us to limit *King* to situations where a trust imposes different procedural requirements for revocation and modification. We decline the invitation for several reasons.

First, like *King*, the Trust *did* set forth different procedures for the revocation and amendment of trust provisions regarding community property. As both counsel acknowledged at oral argument, under sections 5.2.1 and 5.2.4, *either* trustor could revoke provisions regarding community property by acknowledged written instrument, but modification of provisions regarding community property required *both* trustors executing an acknowledged written instrument. Second, Mary's interpretation is belied by the plain language of section 15402. Had the Legislature intended for section 15402 to require an explicit statement of exclusivity for modification

8

procedures, it could have so stated, as it did in section 15401. (*King*, *supra*, 204 Cal.App.4th at p. 1193, fn. 3 [noting Legislature used "different statutory language" in section 15402].) Or it elsewise could have omitted the qualifying phrase, "[u]nless the trust instrument provides otherwise," from section 15402. It did neither. "We cannot ' "rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed." ' " (*Cahill Construction Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 777, 787.)

We acknowledge that *Haggerty v. Thornton* (2021) 68 Cal.App.5th 1003, review granted December 22, 2021, S271483 (*Haggerty*) — which was decided while this appeal was pending — reached a different result.[4] There, a reservation of rights provision provided that the settlor " 'may' " amend or revoke the trust " 'by an acknowledged instrument in writing.' " (*Id.* at p. 1006.) The settlor drafted and signed an amendment but did not have the amendment notarized. (*Ibid.*) The settlor's niece argued the "amendment was invalid because it was not 'acknowledged' as described in the trust agreement." (*Ibid.*)

The *Haggerty* court disagreed. It concluded the settlor could amend the trust pursuant to the revocation procedure set forth in section 15401. (*Haggerty*, *supra*, 68 Cal.App.5th at p. 1012, rev. granted.) *Haggerty*

---

[4] Our high court granted review on the following issue: "Can a trust be modified according to the statutory procedures for revocation of a trust (Prob. Code, § 15401) if the trust instrument itself sets forth identical procedures for modification and revocation?" *Haggerty* may be cited for "persuasive value," and "for the limited purpose of establishing the existence of a conflict in authority that would in turn allow trial courts to exercise discretion under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456, to choose between sides of any such conflict." (*Haggerty v. Thornton*, S271483, Supreme Ct. Mins., Dec. 22, 2021; see also Cal. Rules of Court, rule 8.115(e) & Advisory Com. com.)

9

reasoned that because "the trust does not distinguish between revocation and modification, it does not 'provide otherwise' than the general rule, and under section 15402 the trust may be modified by any valid method of revocation. Moreover, as a reservation of rights, it does not appear [the settlor] intended to bind herself to the specific method described in the trust agreement, to the exclusion of other permissible methods.  Because the method of revocation and modification described in the trust agreement is not explicitly exclusive (and no party argues otherwise), the statutory method of revocation was available under section 15401.  [Citation.]  [The settlor] complied with the statutory method by signing the . . . amendment and delivering it to herself as trustee.  It was therefore a valid modification of the trust agreement." (*Ibid.*)

Relying on the *King* dissent, *Haggerty* added that "[s]ection 15402 cannot be read in a vacuum.  It does not establish an independent rule regarding modification.  It recognizes the existing principle that 'a power of revocation implies the power of modification.'  [Citation.]  The method of modification is therefore the same as the method of revocation, '[u]nless the trust instrument provides otherwise,' i.e., unless the trust instrument distinguishes between revocation and modification.  [Citation.]  The California Law Revision Commission made this point explicit:  ' "Under general principles the settlor, or other person holding the power to revoke, may modify as well as terminate a revocable trust.  [Fn. omitted.]  The proposed law codifies this rule and also makes clear that the method of modification is the same as the method of termination, barring a contrary provision in the trust." '  [Citations.]  Under this interpretation, section 15402 is not mere surplusage . . . .  As the California Law Revision Commission's comment explains, it codifies the existing rule that the power of revocation

10

includes the power of modification, thus an available method of revocation is also an available method of modification—unless the trust instrument provides otherwise." (*Haggerty*, *supra*, 68 Cal.App.5th at p. 1011, rev. granted, citing *King*, *supra*, 204 Cal.App.4th 1196 (dis. opn. of Detjen, J.).)

While we have no quarrel with the general sentiment expressed in *Haggerty* (and other cases) that the power to revoke a trust implies the power to modify it, we disagree with *Haggerty*'s conclusion that the phrase "[u]nless the trust instrument provides otherwise" in section 15402 means that unless the trust instrument *explicitly states that the provided for method of amendment is exclusive*, the statutory method of revocation may be used to modify. (*Haggerty*, *supra*, 68 Cal.App.5th at p. 1011, rev. granted.) The most plain and straightforward reading of the qualifying phrase, "[u]nless the trust . . . provides otherwise," in section 15402 is that when a trust provides for the use of a specific modification method, that method must be used. (*King*, *supra*, 204 Cal.App.4th at p. 1193; Rest.2d, Trusts, § 331, com. d [*"Where method of modification specified*. If the settlor reserves a power to modify the trust only in a particular manner or under particular circumstances, [settlor] can modify the trust only in that manner or under those circumstances."].)[5]

In light of our conclusion, Mary's exposition on the legislative history of sections 15401 and 15402 is unavailing. Mary has not persuasively argued

---

[5] The concurring opinion agrees the Trust "provides otherwise" within the meaning of section 15402; it reasons that the use of the word "shall" sufficiently specifies "an exclusive method of modification." (Conc. opn. of Tucher, P.J., pp. 1, 3.) In our view, it is enough for a trust to specify a procedure for modification — irrespective of whether it uses the words "may," "shall," or something else. In so doing, the trust has provided for a procedure other than the Legislature's fallback method (i.e., the revocation procedures in the trust and section 15401). (*King*, *supra*, 204 Cal.App.4th at p. 1193.) In

11

either statute is ambiguous, and it is well settled that in the absence of ambiguity, the plain meaning of the statutory language governs. (*Fairbanks v. Superior Court* (2009) 46 Cal.4th 56, 61.) Moreover, having reviewed the legislative history surrounding the enactment of sections 15401 and 15402, including the Law Revision Commission's 1986 report regarding the legislative changes, we find nothing inconsistent with our construction of section 15402.

"Sections 15401 and 15402 were enacted in 1986 and became operative in 1987." (*King, supra,* 204 Cal.App.4th at p. 1191.) Before that date, trust revocation was governed by a provision of the Civil Code, but "no statute specifically addressed trust modifications. Rather, courts held that, in general, a power of revocation implied the power of modification" and "applied the rules governing trust revocations to trust modifications." (*King,* at pp. 1191, 1193.) To clarify the law of trusts, the California Law Revision Commission recommended reorganizing and consolidating "the scattered provisions of existing law." (See Recommendation Proposing the Trust Law (Sept. 1986) 18 Cal. Law Revision Com. Rep. (1986) pp. 1201, 1205, 1222.)

In response to the Law Revision Commission's recommendation, the Legislature enacted Assembly Bill No. 2652 (1985–1986 Reg. Sess.), the bill that created sections 15401 and 15402. The Legislative Counsel's summary digest explained, as relevant here, that the bill "would provide that . . . a trust is revocable by the settlor, in whole or in part, by compliance with any method of revocation provided in the trust instrument or by a writing (other

---

other words, the outcome should not turn on a trust's use of supposedly "mandatory" or "permissive" language. Sometimes language that appears mandatory is not; other times, of course, language that appears permissive is mandatory. (E.g., *Kropp v. Sterling Sav. & Loan Assn.* (1970) 9 Cal.App.3d 1033, 1043–1044 [concluding "may" in the trust at issue was mandatory rather than permissive].)

than a will) signed by the settlor . . . . *It would also allow the modification of the trust, unless the instrument provides otherwise, by the same revised procedure for revocation if the trust is revocable by the settlor.*" (Legis. Counsel's Dig., Assem. Bill No. 2652 (1985–1986 Reg. Sess.) as amended Mar. 31, 1986, Summary Dig., p. 3, italics added; *People v. Superior Court* (*Lavi*) (1993) 4 Cal.4th 1164, 1178 [Legislative Counsel's Digest is indicative of legislative intent].)  The Law Revision Commission's 1986 report similarly summarized the proposed legislation:  "Under general principles the settlor, or other person holding the power to revoke, may modify as well as terminate a revocable trust.  The proposed law codifies this rule and also makes clear that the method of modification is the same as the method of termination, *barring a contrary provision in the trust*."  (Recommendation Proposing the Trust Law, 18 Cal. Law Revision Com. Rep., *supra*, at p. 1271, fn. omitted & italics added.)

Taken together, this legislative history does not conclusively resolve what was intended by the phrase, "[u]nless . . . provides otherwise" in section 15402.  *Haggerty* would read that phrase as incorporating a requirement — an explicit statement of exclusivity — that appears in section 15401, but nowhere in section 15402.  Also relevant to the *Haggerty* court is whether the provided for procedures for amendment and revocation differ or are the same, and whether the procedures are exclusive or permissive.  Like *King*, we conclude the simpler construction of section 15402's text is preferable,

13

especially because it does not infer requirements that do not appear in the statutory language.[6]

Mary contends that by jointly executing the amendment, she and the decedent expressed their intent to change the disposition of the property, and she urges us to give effect to the intent expressed in the amendment. But we cannot view the amendment in isolation. While an appellate court "must construe a trust instrument, where possible, to give effect to the intent of the settlor, that intent 'must be ascertained from the whole of the trust instrument, not just separate parts of it.' " (*Pena, supra*, 39 Cal.App.5th at p. 555; *Heaps v. Heaps, supra*, 124 Cal.App.4th at pp. 290–291.) The intent expressed in the Trust, "stated explicitly in its amendment provision, is that a written instrument must be [acknowledged by a notary public] . . . in order to constitute a valid amendment." (*Pena*, at p. 555.) Because the amendment is not notarized, it is ineffective. (*Ibid*.)

In sum, we hold that when a trust specifies a method of amendment, under section 15402, that method must be followed for the amendment to be effective.

---

[6] We do not find relevant or persuasive Mary's citations to cases construing section 15401 and to a predecessor statute that is silent on modification. (*Cundall v. Mitchell-Clyde, supra*, 51 Cal.App.5th at p. 587 [the "validity of a purported trust *modification* . . . is subject to a different statutory analysis" than revocation].) Mary also characterizes the notary requirement as a mere "procedural formality" that she and the decedent had the power "to waive when they drafted and executed" the amendment. "The argument is forfeited because [Mary] failed to raise it below." (*Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 854; *Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 865, fn. 4 [argument not raised below is "not cognizable"].) In the lower court, Mary argued the notary requirement served no purpose, but she did not assert — as she does here —that she and the decedent were "free to waive" the requirement.

**DISPOSITION**

The orders dated January 8 and February 9, 2021 are affirmed. Sal is awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____

Rodríguez, J.

I CONCUR:

_____

Fujisaki, J.

A162222

TUCHER, P.J., Concurring:

Like the majority, I would affirm on the basis that this trust instrument requires an amendment to be notarized, and the amendment here was not.  (Maj. opn. *ante*, at p. 14.)  The trust instrument sets forth the exclusive method for modifying the trust because it requires that "*[a]ny amendment*, revocation, or termination . . . *shall* be made by written instrument signed, with signature acknowledged by notary public, by the trustor(s) making the revocation, amendment, or termination, and delivered to the trustee."  (Italics added.)  Because the proffered amendment was not acknowledged by a notary, it is not valid.

Nothing in Probate Code section 15401 or 15402 requires a different result.  Under Probate Code section 15402, "[u]nless the trust instrument provides otherwise," the settlor of a revocable trust "may modify the trust by the procedure for revocation."[1]  One procedure for revocation is set forth in section 15401, subdivision (a)(2) (the statutory revocation procedure), but that option was not available to the trustors here because this "trust instrument provides otherwise."  (*Ibid*.)  That is, the trust agreement sets forth a different procedure for amending the trust, *and* it does so in language that makes the specified method exclusive.  That the trust agreement does not expressly state its method is exclusive is of no moment, as the requirement for express exclusivity appears only in section 15401, subdivision (a)(2), governing revocation.

Unlike the majority, I would stop there.  I would not also decide that the same result obtains when a trust instrument sets forth a method for

_____

[1] Unspecified statutory references are to the Probate Code.  Section 15402 provides, in its entirety, "Unless the trust instrument provides otherwise, if a trust is revocable by the settlor, the settlor may modify the trust by the procedure for revocation."

1

amending the trust in terms that are permissive, rather than mandatory. That issue is not presented by the facts of our case, and I'm not persuaded that the majority's resolution of it is correct.

My reservations arise primarily from what seems to me the most natural reading of the statutory phrase "[u]nless the trust instrument provides otherwise." (§ 15402.) This phrase qualifies the provision that immediately follows it, that the settlor of a revocable trust "may modify the trust by the procedure for revocation." (§ 15402.) I read this sentence to mean that the settlor may modify the trust using any appropriate procedure for revocation "[u]nless the trust instrument" says that the settlor may not (i.e., "provides otherwise"). (§ 15402.) I can think of three ways a trust instrument could exclude use of the procedures for revocation. First, the trust instrument could state that no modification of the trust is allowed. Second, it could state, as the instrument before us does, that modification is allowed only if some other specific procedure is followed. And third, it could allow modification using permissive language but state that procedure(s) for revocation may not be used. If the trust does none of these things, then I don't see how it has "provide[d] otherwise." In particular, if a trust instrument sets forth a method for modification but does not explicitly or implicitly limit trustors to the use of this method, I don't think it has sufficiently negated the statutory provision granting the settlor authority to modify the trust using a procedure for revocation. In such circumstances (not before us), it seems to me that the settlor remains free to modify the trust using any procedure for revocation *or* any procedure for modification that the trust sets forth in permissive, but not mandatory, language.

This construction of section 15402 is not the one adopted by the majority in *King v. Lynch* (2012) 204 Cal.App.4th 1186, which concluded a

2

permissive, nonexclusive modification provision displaced the statutory revocation procedure.  Nor is it identical to the construction in *Haggerty v. Thornton* (2021) 68 Cal.App.5th 1003, review granted December 22, 2021, S271483, which held that any authorized method of revocation may be used to modify the trust unless the trust instrument distinguishes between revocation and modification.  (*Id*. at pp. 1011–1012.)

The construction I suggest does, however, provide a measure of continuity with case law that predates the adoption of section 15402.  Under prior law, there was a statutory procedure for revoking a trust similar to the statutory procedure available today (compare former Civ. Code, § 2280 with Prob. Code, § 15401, subd. (a)(2)), and case law allowed this statutory revocation procedure also to effect a modification, on the theory "that the right to revoke included an implied right to modify."  (*Huscher v. Wells Fargo Bank* (2004) 121 Cal.App.4th 956, 962, fn. 5.)  This was the principle that section 15402 sought to codify.  (Cal. Law Revision Com. com., West's Ann. Prob. Code (2021 ed.) foll. § 15402 ["This section codifies the general rule that a power of revocation implies the power of modification"].)  The *Huscher* court, after analyzing cases decided under the earlier statute, derived from those cases the rule that "a trust may be modified in the manner provided by [the predecessor statute] unless the trust instructions either *implicitly or explicitly specify an exclusive method of modification*."  (*Huscher*, at p. 968, italics added.)

I am inclined toward a similar rule here: a trust may be modified by the current statutory procedure for revocation "unless the trust instrument provides otherwise" by implicitly or explicitly specifying an exclusive method of modification (or by expressly taking off the table the option of modification by a procedure for revocation).  (§ 15402.)  But my view here is provisional.

3

Because the facts of our case do not require us to decide between this rule and the one the majority adopts, I would leave for another day resolution of this point of difference.  On the case before us, the majority and I completely agree.


TUCHER, P. J.

Superior Court of San Francisco City and County, Hon. Ross C. Moody.

Hartog, Baer & Hand, Ryan J. Szczepanik and Kevin P. O'Brien, for Plaintiff and Appellant.

Ragghianti Freitas, Paul B. Gruwell, for Defendant and Respondent.